**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CHRISTOPHER BRIAN PETERS,

      Petitioner,

v.                              Case No. 8:13-cv-2583-T-36JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## <u>ORDER</u>

Petitioner Christopher Brian Peters, an inmate in the Florida Department of Corrections proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1).  He challenges his convictions entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida, in 2010.  Respondent filed a response to the petition (Dkt. 8).  Peters filed a reply (Dkt. 9).  Upon review, the petition must be denied.

**PROCEDURAL HISTORY**

Peters entered a negotiated plea of guilty to one count of attempted first degree murder.  (Dkt. 11, Ex. 1, pp. 28-31.)  He was sentenced to a minimum mandatory term of ten years in prison.  (*Id.*, pp. 37-40.)  Peters did not appeal the conviction and sentence. Peters filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (*Id.*, pp. 14-27.)  The state court denied the motion after conducting an evidentiary hearing.  (*Id.*, pp. 42-199, Ex. 1a, pp. 200-03.)  The state appellate court *per curiam*

affirmed the order of denial.  (Dkt. 11, Ex. 5.)  It also denied Peters' motion for rehearing. (Dkt. 11, Exs. 6, 7.)[1]

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal

---

[1] Respondent contends that the petition is untimely.  Peters' federal habeas petition is deemed filed on the date it was delivered to prison officials for mailing.  *See Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).  The petition contains a date stamp reflecting that Peters provided it to prison officials for mailing on October 3, 2013.  (Dkt. 1, p. 1.)  A review of the record demonstrates that, under 28 U.S.C. § 2244(d)(1)(A), Peters' petition was due to be filed by October 2, 2013.  However, Peters attaches to his reply a privileged mail log reflecting that his outgoing legal mail was received by Franklin Correctional Institution on October 2, 2013.  (Dkt. 9, p. 7.)  Assuming this outgoing mail was Peters' federal habeas petition, it is not clear why the petition was not date stamped until the next day.  Given Peters' documentation, however, the Court will proceed as if his federal habeas petition was constructively filed on October 2, 2013, and is therefore timely.

habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the

extent possible under law." *Cone*, 535 U.S. at 693.  In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).  *See also Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

The state appellate court affirmed the denial of Peters' postconviction motion in a *per curiam* decision without a written opinion.  This decision warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.   Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster,* 563 U.S. at 181-82. Peters bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

**EXHAUSTION OF STATE COURT REMEDIES; PROCEDURAL DEFAULT**

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.  28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckei*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Fruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir.

1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).   A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."   *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).  The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.   28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."   *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."   *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with

error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982). The

petitioner must show at least a reasonable probability of a different outcome. *Henderson*,

353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally

defaulted claim if review is necessary to correct a fundamental miscarriage of justice.

*Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A

fundamental miscarriage of justice occurs in an extraordinary case where a constitutional

violation has probably resulted in the conviction of someone who is actually innocent.

*Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception

requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th

Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of

acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are analyzed under the test set forth in

*Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and
> well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct.
> 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for
> analyzing ineffective assistance of counsel claims. According to *Strickland*,
> first, the defendant must show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth
> Amendment. Second, the defendant must show that the deficient
> performance prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). Demonstrating deficient

performance "requires showing that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Stricklana*, 466 U.S. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Ia.*

Peters must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. When the case involves a plea, the prejudice inquiry focuses on whether counsel's deficient performance "affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

The test has nothing to do with what the best lawyers would have done. Nor

is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations omitted).  *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

### Grounds One and Two Are Procedurally Defaulted

In Ground One, Peters alleges that trial counsel was ineffective for failing to notify

the court he might have been incompetent to proceed.  In Ground Two, Peters argues that trial counsel was ineffective for not having him evaluated for competency prior to the plea, and that his plea was involuntary "due to him being impaired by mental disorders and prescription medications."  (Dkt. 1, p. 6.)

Peters raised these arguments in grounds one and two of his postconviction motion. (Dkt. 11, Ex. 1, pp. 16-21.)  After holding an evidentiary hearing, the state court denied these claims.  (*Id.*, pp. 44-45.)  However, Peters did not appeal their denial.  (Dkt. 11, Ex. 3.) Postconviction appeals following a state court evidentiary hearing are governed by Florida Rule of Appellate Procedure 9.141(b)(3).  This Rule requires the appellant to serve an initial brief within 30 days of service of the record.  Fla. R. App. P. 9.141(b)(3)(C).  In Florida, an appellant is considered to have abandoned claims that were not briefed with specific argument. *Simmons v. State*, 934 So.2d 1100, 1111 n. 12 (Fla. 2006) (citing *Coolen v. State*, 696 So.2d 738, 742 n.2 (Fla. 1997)).  Peters' failure to present these claims to the state appellate court leaves the exhaustion requirement unsatisfied.  *See Cortes v. Gladish*, 216 Fed. App'x 897, 899 (11th Cir. 2007) ("To exhaust state remedies, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review.") (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

State procedural rules do not provide for successive collateral appeals. *See* Fla. R. App. P. 9.141.  Accordingly, Grounds One and Two are procedurally defaulted. *See Smith*, 256 F.3d at 1138.  Peters does not establish that either the cause and prejudice or fundamental miscarriage of justice exceptions apply to overcome the default of Grounds One and Two.  Accordingly, they are barred from federal habeas review.

**Ground Three**

In Ground Three, Peters argues that trial counsel was ineffective for failing to investigate, depose, and call Tim Winters as a witness.  Peters lived in Georgia; his daughter lived in Florida with Peters' ex-wife and her boyfriend.  Peters asserts that his ex-wife's boyfriend threatened to abuse his daughter. The State alleged that, in a plan to kill his ex-wife's boyfriend, Peters called a contact in Florida to obtain two firearms.  However, Peters' contact was also a confidential informant who told police of this communication. After Peters traveled to Florida and acquired the firearms, he was arrested.

Tim Winters was Peters' boss and friend in Georgia.  Peters alleges that Winters was aware of the threats against Peters' daughter, and would have testified about Peters' medical treatment for mental disorders and for a head injury he suffered prior to the offense.  He claims that "Mr. Winters informed defense counsel the Defendant was distraught and inconsolable due to circumstances.  Defense counsel never investigated or depos[ed] Tim Winters in regards to the information to prepare the defense and deprived the defense [of] relevant information that would have apprise[d] the court to assure due process [a] mental evaluation was necessary."  (Dkt. 1, p. 8.)

Preliminarily, the record supports the conclusion that Peters voluntarily entered his plea.  The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alfora*, 400 U.S. 25, 31 (1970).  "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea

. . . will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).

Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant [and] his lawyer [at a plea hearing] . . . as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

The plea colloquy included the following:

THE COURT: Are you taking any kind of medication right now?

MR. PETERS: Yes, sir.

THE COURT: What are you taking?

MR. PETERS: Tegretol, Trazedone and Prozos (ph).

THE COURT: Does it interfere with you understanding what's going on?

MR. PETERS: No, sir.

THE COURT: You're sure?

MR. PETERS: It actually helps me understand.

THE COURT: I'm sorry?

MR. PETERS: It actually helps me understand what's going on.

THE COURT: You fully understand what's going on right now, okay. Do you understand you're charged with and are pleading guilty to attempted murder in the first degree which is punishable by up to life in prison? Was this a

discharge of a firearm?

[THE STATE]:  No, sir.  It's just possession.

THE COURT:  I'm sorry?

[THE STATE]:  Just possession.

THE COURT:  Possession of a firearm and that carries a ten year minimum mandatory?

[THE STATE]: Yes, sir.

THE COURT:  Do you understand that?

MR. PETERS:  (There was no audible response.)

THE COURT:  Is that a - - that's probably a day-for-day, is it not?

[THE STATE]:  Yes, sir, it is.

THE COURT:  So you're not going to get gain time on this.  Do you understand that?

MR. PETERS:  Yes, sir.

THE COURT:  Okay.  Do you know what a jury trial is?

MR. PETERS:  Yes, sir.

THE COURT: Do you understand that by entering this plea, you're giving up your right to a jury trial?

MR. PETERS:  Yes, sir.

THE COURT:  And are you absolutely sure this is what you want to do?

MR. PETERS:  Yes, sir.

THE COURT:  Have you had sufficient time to talk to [counsel] about this?

MR. PETERS:  Yes, I have.

THE COURT:  Do you need any additional time to speak to her?

MR. PETERS:  No, sir.

THE COURT:  Are you absolutely sure?

MR. PETERS:  Yes, sir.

THE COURT:  All right.

. . .

THE COURT:  Okay.  Let me have the factual - - no.  No, don't give me the factual basis for right now.  By pleading guilty, Mr. Peters, you're effectively giving up any meaningful right to appeal except for things that are called fundamental error, which is probably going to be very rare in this case.  Do you understand that?

MR. PETERS:  Yes, sir.

THE COURT:  Okay.  Have you had a chance to read and review this plea form?

MR. PETERS:  Yes, sir.

THE COURT:  Are you absolutely sure you understand the rights you're giving up?

MR. PETERS:  Yes, sir.

THE COURT:  Do you have any questions about any of your rights?

MR. PETERS:  No, sir.

THE COURT:  And are you sure you understand what's going on here today?

MR. PETERS:  Yes, sir.

THE COURT:  Very well.

. . .

THE COURT: You filed a motion to dismiss, did you not?

[COUNSEL]: Yes, sir.

THE COURT: Do you understand that you're basically waiving or giving up

your right to me considering the merits of that motion by entering your plea?

MR. PETERS: Yes, sir.

. . .

[COUNSEL]: Well, the State traversed, Judge, and you denied the motion.

THE COURT: Right.  All right.  By entering a plea of guilty, you're foreclosing any appellate issue on that.  Do you understand that?

MR. PETERS: Yes, sir.

THE COURT: Any questions?

MR. PETERS: (There was no audible response.)

THE COURT: Anything you want to say?

MR. PETERS: No, sir.

(Dkt. 11, Ex. 1, pp. 194-99.)

The record reflects Peters understood the rights he waived by entering the plea, the charge against him, and that he would receive a day-for-day sentence without gain time. It further shows that Peters wanted to enter the plea and expressed certainty in his decision.  Additionally, the change of plea form Peters signed states that the maximum term he faced upon conviction was life imprisonment.  (Dkt. 11, Ex. 1, p. 28.)  Accordingly, the record reflects that Peters voluntarily entered his plea.  To the extent that Peters may argue counsel's performance affected the voluntariness of the plea, however, he is not entitled to relief.[2]

_____

[2] Generally, entry of a voluntary plea forecloses challenges to constitutional violations that occurred prior to the plea.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973)  ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").  However, a plea does not bar review of a claim of ineffective assistance of counsel to the

The state court granted an evidentiary hearing when Peters raised this claim in his postconviction motion.  Winters testified that many situations impacted Peters and caused him to obtain mental health treatment.  (Dkt. 11, Ex. 1, p. 90.)  In particular, Winters testified that about a week before the offense, Peters was beaten in the head.  (*Id.*)  Winters testified that he took Peters to the hospital and that Peters was prescribed medications for mental health issues and his head injury.  (*Id.*, pp. 94-95.)  Winters stated that after the head injury, Peters would repeat information or conversations and that he believed Peters' "mind was not processing and keeping things."  (*Id.*, pp. 93-94, 96-97.)  Winters testified that he met with Peters' attorney and gave her this information but that she never contacted him again.  (*Id.*, pp. 92, 97.)

Peters testified that he would have gone to trial if Winters had been available because Winters could have explained "what happened."  (*Id.*, p. 111.)  He testified that he told counsel Winters was essential and "knew a lot about what was going on."  (*Id.*, pp. 117, 118.)  He testified that counsel informed him she spoke to Winters one time but was not able to contact him again.  (*Id.*, pp. 111, 118.)

Counsel testified that after Winters told her Peters suffered a head injury prior to the offense and gave her contact information for hospitals, she obtained Peters' medical records.  (*Id.*, pp. 146-47.)   As a result, she arranged for Mark Ruiz, Ph.D., to examine Peters for insanity at the time of the offense.  (*Id.*, pp. 147, 149, 157.)  Counsel testified that

---

extent the alleged ineffectiveness bears upon the voluntariness of the plea itself.  *See Hill*, 474 U.S. at 56-57 (defendant who enters guilty plea upon advice of counsel can only attack the voluntary nature of the plea by showing that counsel's advice was not within the range of competence demanded of attorneys); *Stano*, 921 F.2d at 1150-51 ("The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove 'serious derelictions' in his counsel's advice regarding the plea.") (citation omitted).

Dr. Ruiz concluded Peters was not insane; that he acted in a deliberate and organized manner; that there was no evidence of psychosis, delusional thinking, or acute mental health impairment; and that the incident was not a result of bipolar disorder, addictive disorder, or a recent head injury. (*Id.*, p. 150.)[3]   Counsel told the court that she discussed the examination results with Peters. (*Id.*, p. 151.) When Peters asked counsel to follow up with Winters regarding a phone call between Peters and the intended victim, her investigator was unable to contact Winters because his phone number was disconnected or no longer in service. (*Id.*, p. 152.)

Counsel also testified that she had no concerns with Peters' competency to proceed. (*Id.*, p. 141.)[4]   The record reflects that Peters had a history of mental health issues and at the time of the change of plea told counsel he was suffering from post traumatic stress disorder and bipolar disorder. (*Id.*, pp. 30, 143-44.)   At the postconviction evidentiary hearing, counsel indicated that Peters could communicate so as to assist her with the case, and stated that Peters relayed details about the facts and history of events as well as the motive for his actions. (*Id.*, p. 140.) Counsel further testified that he understood the facts, the penalties he was facing, and the option of proceeding to trial. (*Id.*, p. 141.) She did not believe Peters' medications prevented him from understanding the plea proceedings. (*Id.*, pp. 143, 145.)

---

[3] Dr. Ruiz's report supports counsel's testimony. (Dkt. 11, Ex. 1, pp. 181-185A.)

[4] The standard for competency to proceed is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). *See also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."). This standard applies whether a defendant proceeds to trial or enters a plea. *Godinez v. Moran*, 509 U.S. 389 (1993).

The state court denied Peters' claim.   It addressed Peter's argument and the evidentiary hearing testimony before concluding:

> After reviewing the allegations, the court file, and the record, the Court finds [counsel's] testimony to be more credible than that of Defendant and Mr. Winters.  The Court finds [counsel] met with Mr. Winters, and based upon that meeting had Defendant evaluated, but that evaluation was not supportive of an insanity defense, and she had no indication there was a competency issue.  The Court finds [counsel] did meet with Mr. Winters once, then could not contact him, however, the Court finds Mr. Winters' testimony would not have affected the outcome of trial due to Dr. Ruiz's report.  The Court finds Defendant cannot demonstrate deficient conduct or prejudice.  **As such, no relief is warranted**.

(Dkt. 11, p. 47) (court's record citations omitted) (emphasis in original).

The record supports the state court's conclusion.[5]   As a result of Winters' information, counsel enlisted Dr. Ruiz to investigate Peters' sanity at the time of the offense.   However, the results of Dr. Ruiz's examination provided no basis for an insanity defense.   Peters does not identify what further information Winters could have provided to counsel or could have testified to at a trial. Additionally, the change of plea hearing is consistent with counsel's testimony that Peters did not appear incompetent to proceed.

Deference must be afforded to the state court's determination that counsel's testimony was more credible than that of Peters.   *See Consalvo v. Sec'y, Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province

---

[5] Peters asserts that Winters' testimony should not be considered in hindsight.  He states, "[t]he fact Mr. Winters was not called at trial this relevant information was not adduce[d] prior to entering the plea, and it cannot be considered in retrospect to determine whether the Defendant's mental status affected his ability to make an intelligent decision during the plea process, and Defendant's Sixth and Fourteenth Amendment rights to a fair trial by not being tried while incompetent were violated." (Dkt. 1, pp. 8-9.)  Peters demonstrates no error in the state court's decision under § 2254(d) as a result of considering Winters' evidentiary hearing testimony.  To the extent Peters may assert an independent claim that he was in fact incompetent when he entered his plea, and to the extent this claim was raised in ground two of his postconviction motion, it is procedurally defaulted and barred from review for the reasons addressed in Ground Two, *supra*.

and function of state courts, not a federal court engaging in habeas review.  Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'") (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)); *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's].");  *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d).").  Peters does not overcome the presumption that the court's credibility finding was correct.

Accordingly, Peters fails to establish that counsel performed deficiently for not investigating, deposing, or calling Winters as a witness.  He does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.  Ground Three warrants no relief.

**Ground Four**

Peters argues that counsel was ineffective for allowing him to plead guilty to a crime he did not commit.  Peters agrees that he told the informant "he needed the guns to take care of his ex-wife's current boyfriend who he believed to be a pedophile threatening to abuse Defendant's daughter."  (Dkt. 1, p. 10.)  However, he asserts that he never named the person "he intended to use the gun on," and never had an opportunity to commit "an overt act or corpus delicti" because he was arrested immediately after acquiring the firearms.  (*Id.*)

The state court denied the claim after the evidentiary hearing.  It summarized Peters'

claim and found:

> Defendant did not testify as to this claim.
>
> At the hearing, [counsel] testified she filed a motion to dismiss and it was denied.  She also testified that he indicated that he had met with the CI and told the CI about his plans.  She testified it was Defendant's decision to accept the plea, and she did not promise him anything or coerce him in any way.
>
> After reviewing the allegations, the court file, and the record, the Court finds [counsel] to be credible.  The Court finds she filed a motion to dismiss, and did not coerce Defendant into taking this plea.   The Court finds Defendant cannot demonstrate deficient conduct.  **As such, no relief is warranted**.

(Dkt. 11, Ex. 1, p. 48) (court's record citations omitted) (emphasis in original).

Peters is not entitled to relief.  The gravamen of his claim is that counsel was ineffective for permitting him to go forward with the plea because, under Florida law, his actions never progressed beyond mere preparation and thus could not sustain a conviction for attempted first degree murder.  *See Williams v. State*, 531 So.2d 212, 216 (Fla. 1st DCA 1988) ("[T]he elements of attempted first degree murder include: (1) a premeditated design and specific intent to commit the underlying crime of murder, and (2) an overt act designed to effectuate that intent, carried beyond mere preparation, but falling short of executing the ultimate design.").  *See Carlton v. State*, 103 So.3d 937, 939 (Fla.  5th DCA 2012) ("To establish the crime of attempt, the State must prove the defendant intended to commit a crime, committed an overt act towards its commission, and failed to successfully complete the crime. . . . 'An overt act is one that manifests the pursuance of a criminal intent, going beyond mere preparation to the actual commencement of the crime.'" (quoting *Bist v. State*, 35 So. 3d 936, 941 (Fla. 5th DCA 2010)); *State v. Walker*, 705 So.2d 589, 590 (Fla. 4th DCA 1997) ("To support a charge of attempt, there must be evidence of an overt act going beyond mere preparation which manifests pursuit of a design or intent to commit a crime.

. . . The criminal attempt occurs, after preparation, when there is direct movement towards the ultimate commission of the crime.").

Peters argued in his postconviction motion that he never had an opportunity to carry out any plan, and on postconviction appeal the parties addressed whether the evidence demonstrated actions beyond mere preparation sufficient to constitute attempted first degree murder.  (Dkt. 11, Ex. 1, p. 25; Ex. 2, pp. 12-14; Ex. 3, pp. 6-12; Ex. 4, pp. 2-6.) The state courts determined that this underlying state law issue lacked merit by rejecting Peters' claim.  Deference must be afforded to this determination.  *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)); *Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).

Peters does not demonstrate any deficient performance by counsel.  Counsel's evidentiary hearing testimony reflects that her "(c)(4)" motion to dismiss was denied.  (Dkt. 11, Ex. 1, p. 154.)  Florida Rule of Criminal Procedure 3.190(c)(4) permits motions to dismiss alleging that there are no material facts in dispute, and the undisputed facts do not

establish a prima facie case of guilt.   Counsel undertook this action even though, as her testimony suggests, the State could offer significant evidence against Peters. (*Id.*, pp. 154-55.)   Again, Peters does not overcome the presumption of correctness afforded to the state court's determination that counsel's testimony was credible.[6]   Moreover, the state court found on postconviction review that the underlying evidentiary issue was meritless.

Under these circumstances, Peters does not show that counsel performed deficiently for allowing him to enter a plea to a crime he did not commit.[7]   Peters does not establish that the state court's rejection of his claim was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.   Accordingly, Ground Four warrants no relief.

It is therefore

**ORDERED** that Peters' petition for writ of habeas corpus (Dkt. 1) is **DENIED**.   The Clerk is directed to enter judgment against Peters and to close this case.

It is further **ORDERED** that Peters is not entitled to a certificate of appealability.   A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition.   28 U.S.C. § 2253(c)(1).   A district court must first issue a certificate of

---

[6] The motion to dismiss is not contained in the record before the Court.  On postconviction appeal, Peters alleged that the motion to dismiss only alleged police misconduct and "substantive due process violations."  (Dkt. 11, Ex. 3, p. 7.)  Even assuming that the motion to dismiss did not allege that the State's evidence did not establish a prima facie case of guilt, however, Peters has not demonstrated that counsel was ineffective because the Florida courts have determined that the state law issue upon which Peters' claim rests was meritless.

[7] Once he entered the plea, Peters admitted to the elements of attempted first degree murder. *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) ("A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.") (quoting *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986)); *United States v. Saac*, 632 F.3d 1203, 1209 (11th Cir. 2011) ("[A] guilty plea serves as an admission of all of the elements of a formal criminal charge.") (quoting *United States v. Skinner*, 25 F.3d 1314, 1316-17 (6th Cir. 1994)).

appealability (COA).  *Id.*  "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Peters "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Peters has not made this showing.  Finally, because Peters is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on November 30, 2016.

Charlene Edwards Honeywell
United States District Judge